IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         vs.<br><br>AARON MCGRATH,<br><br>                    Defendant. | **8:12CR422**<br><br>**SENTENCING MEMORANDUM** |

This matter is before the court for sentencing.   This memorandum opinion supplements findings made on the record at a sentencing hearing on December 6, 2013.

## I.  BACKGROUND

### A.  Facts

The defendant was charged in a seven-count indictment with one count of knowingly engaging in a child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g); one count of knowingly conspiring to make, print, and publish, and cause to be made, printed, and published, any notice and advertisement seeking and offering to traffic in child pornography, in violation of 18 U.S.C. § 2251(d)(l) and (e); one count of knowingly making, printing and publishing child pornography, in violation of 18 U.S.C. § 2251(d)(1);  and four counts of transporting and shipping child pornography by computer in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1).[1]   Filing No. 18, Indictment.  He entered a plea of guilty to Count I of the Indictment.  Filing No. 46, Plea Agreement.

---

[1] The statutory penalties for that crime is 20 years to life.  18 U.S.C. § 2252A(g).

In the plea agreement, the United States ("the government") agreed to dismiss Counts II through VII and to file a motion for downward departure under U.S.S.G. 5K1.1.[2]   *Id.* at 1, 3.   The court accepted McGrath's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated McGrath's sentence under the United States Sentencing Guidelines ("the Guidelines").   Filing No. 43, Minute Entry.

In the PSR, the Probation Office based its outline of the offense conduct on the prosecutor's version of events and conversations with a case agent.   *Id.* at 6-9.   The defendant created and operated three separate websites dedicated to the advertising and distribution of child pornography between January of 2009 and November of 2012.   Filing No. 57, PSR (sealed) at 6.   The websites run by the defendant operated on a "hidden service" located on the Tor network.   *Id.* at 7.   Mr. McGrath was the sole administrator of the websites, hosting and operating them from computers at his home and workplace.   *Id.*   The Tor network, also known as the Onion Router, operates on an anonymity network that is now available to the public at large and users must download free software in order to access the network.   *Id.* at 7.   The prosecutor stated that one of the sites had over 5,600 members, over 3,000 message threads and over 24,000 postings as of December of 2012.   *Id.* at 6.   The forum for posting images on the site contained sub-forums that were categorized by age and gender, including separate sections for "Babies," prepubescent boys, prepubescent girls, teenage boys, and

---

[2] In the plea agreement, the government stated that the motion for downward departure would not include authorization to depart below the twenty-year mandatory minimum sentence.   *Id.* at 3.

teenage girls. *Id.* The text areas of the site included a forum specifically designated for discussion of matters pertinent to pedophilia. *Id.*

The Probation Office determined that the defendant's base offense level was 35 under U.S.S.G. § 2G2.6(a). *Id.* at 10. It found the following upward adjustments were applicable: a four-level increase under U.S.S.G. § 2G2.6(b)(1)(A) (for a victim under the age of 12); a two-level increase under U.S.S.G. § 2G2.6b)(4) (for using a computer or interactive computer service in furtherance of the offense); and a four-level increase under U.S.S.G. § 3B1.1(a). *Id.* at 10. The application of these enhancements results in an adjusted offense level of 45. *Id.* After subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, McGrath's total offense level under the Guidelines is 42. *Id.*

The Probation Office assessed no criminal history points because the defendant had only been convicted of traffic violations that do not qualify for criminal history points under U.S.S.G. § 4A1.2(c) (2) (speeding and an improper turn). *Id.* at 11. At offense level 42 and criminal history category I, McGrath's range of imprisonment under the Guidelines is 360 months (thirty years) to life and his supervised release range is five years to life. *Id.* at 16.

In the PSR, the Probation Office related that McGrath is 30 years old. *Id.* at 12. He is single and has no children. He has no history of mental health treatment or counseling, but was diagnosed with attention deficit disorder as a child. *Id.* He is a light drinker and has never used illicit substances. *Id.* at 13. He graduated from Hastings St. Cecilia High School in 2001, and attended Creighton University and the University of Nebraska. *Id.* He was most recently employed as a systems administrator, earning

$30,000 per year. *Id.* at 14. Previously, he was employed as an electronics salesperson, as a technical support person, a telephone customer support person and a retail sales associate. *Id.*

The government accepted and adopted the PSR. Filing No. 52. It later moved for a two-level departure from the PSR's calculated Guidelines determination based on defendant's cooperation. Filing No. 55. It stated, however, that "Due to the limited nature of defendant's assistance, this motion is limited to Section 5K 1.1 and does not authorize departure below any mandatory minimum sentence." *Id.* The government argued for a sentence of 360 months and the Probation Office recommended the same sentence.

The defendant objected to the four-level enhancement for being a leader or organizer under U.S.S.G. § 3B1.1 and to the enhancement for use of a computer under U.S.S.G. § 2G2.6(b)(4). Filing No. 50. He argued that he created the website but "did nothing to organize, lead, manage or supervise" any of the individuals who accessed the website. Filing No. 51, Brief at 2.

At the sentencing hearing, the government offered several exhibits, including interface reports, that showed a record of user topics, the rules of the site, and McGrath's level of interaction with the site. Filing No. 59, Exs. 1-4.

    **B.  LAW**

       **1.  Sentencing**

Because the Sentencing Guidelines are no longer mandatory, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *See United States v. Booker*, 543 U.S. 220, 260-61 (2005); *Gall v. United States*, 552

U.S. 38, 59 (2007); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Rita v. United States*, 551 U.S. 338, 349-50 (2007); *Cunningham v. California*, 549 U.S. 270, 286-87 (2007). District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at 101 (quoting *Booker*, 543 U.S. at 245-246).

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant. *See, e.g., Gall*, 552 U.S. at 41, 49-50 & n.6; *Booker*, 543 U.S. at 259-60; *Nelson v. United States*, 555 U.S. 350, 351-52 (2009) (per curiam). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)).

The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. *Nelson*, 55 U.S. at 351; *United States v. VandeBrake*, 679 F.3d 1030, 1040 n.7 (8th Cir. 2012) (explaining that the three steps in the post-*Booker* sentencing process are: (1) to determine the initial advisory guideline sentencing range, (2) to determine any appropriate departures (upward or downward) from the guidelines, and (3) to decide whether to vary from the advisory guideline range based on the factors set forth in

§ 3553(a), so long as such a variance is reasonable).  A sentencing court may not presume that a sentence within the applicable Guidelines range is reasonable.  *Id.*

In determining a sentence, the court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards, basing its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise."  *Kimbrough*, 552 U.S. at 108-09; *Rita*, 551 U.S. at 349-50.  When Guidelines are not the result of the Commission's exercise of its characteristic institutional role, such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives'" and it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case."  *Kimbrough*, 552 U.S. at 109-110 (quoting *Rita*, 551 U.S. at 350); *Gall*, 552 U.S. at 46 n.2.

In formulating most Guidelines, the Commission developed and used data on past practices and recidivism to establish offense levels for each crime, linked to a recommended imprisonment range, based on these sentencing statistics.  *See* United States Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing:  An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 14, 72-73 (November 2004), available at http:// www.ussc.gov/Research_

6

and_Statisitics/Research_Projects/Miscellaneous/15_year_study/index.cfm       ("Fifteen-Year Assessment") (last visited Jan. 9, 2014); U.S.S.G. § 1A.1, intro. comment., pt. A, 3.   However, both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses.   Fifteen-Year Assessment at 15, 72-73; United States Sentencing Comm'n, *The History of the Child Pornography Guidelines* 44-48 (October 2009), *available at* http://www.ussc.gov/ Publications/ Offense_Types/index.cfm ("2009 Child Pornography Rep't") (discussing the Commission's approach to setting a base offense level that corresponds to a mandatory minimum sentence) (last visited Jan. 9, 2014); Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008), *available at* http://www.fd.org/navigation/select-topics-in-criminal-defense/sentencing-resources/       subsections/deconstructing-the-guidelines (unpublished comment) (last visited Jan. 8, 2014).   Most guidelines for child exploitation offenses were promulgated, for the most part, in response to statutory directives.[3]   *See* Child Porn History Rep't at 8–50 (discussing the various statutes related to child

---

[3] Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children.   *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253; the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253; the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a); the Sex Crimes Against Children Act of 1995, *codified as amended* at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional* in *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002)*), & 2252A; the Protection of Children from Sexual Predators Act of 1998, codified as amended* at 18 U.S.C. § 2426; the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B; the PROTECT Our Children Act, Pub. L. No. 110–401, § 304 (2008).   In late 2012, Congress enacted the Child Protection Act of 2012, which raised the statutory maximum term of imprisonment for possession of child pornography from ten to 20 years for defendants who possessed images of a prepubescent minor or a minor under 12 years of age. *See* P. L. No. 112–206, 126 Stat. 1490 (Dec. 7, 2012).

pornography that Congress has enacted since 1977); *see, e.g.*, U.S.S.G. App. C, Vol. I, Amends. 435 & 436 (Nov. 27 1991), 537 & 538 (Nov. 1, 1996); Vol. II, amends. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amends. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004), 701 (Nov. 1, 2007).  Specifically, the Guideline at issue herein, U.S.S.G. § 2G2.6, was promulgated in response to congressional directive in the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109–248.  See U.S.S.G. App. C, amend. 701; *United States v.  Daniels*, 653 F.3d 399, 411 (6th Cir. 2011), *cert. denied* 132 S. Ct. 1069 (Jan. 9, 2012).

The text and structure of the statutes that criminalize sexual abuse and exploitation of minors prohibit conduct across a spectrum of activity that includes actual abuse, engaging in abusive or exploitative enterprises, transporting minors with intent to abuse, commercial exploitation and promotion of abuse, and receipt, distribution, advertisement, or possession of child pornography. *See* 18 U.S.C. §§ 1328, 1521, 2422, 2422A, 2425, and 2433.  The Adam Walsh Act "enhanced punishments for the sexual trafficking of minors." *Daniels*, 653 F.3d at 411.  The Act created a new crime of engaging in a Child Exploitation Enterprise (CEE), which carries a mandatory minimum of twenty years in prison and a maximum term of life imprisonment. *Id.*; *see* 18 U.S.C. § 2252A(g); s*ee* United States Sentencing Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (Dec. 2012) ("2012 Child Pornography Rep't") at 36, *available at http://www.ussc.gov/Legislative_and_Public_Affairs/ Congressional_ Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_ Offenses/index.cfm*.  The legislation was intended to impose tough mandatory minimum penalties for the most serious crimes against children—sex trafficking of children and

child prostitution. *See* Pub. L. No. 109-248, § 701, 2006 U.S.C.C.A.N. (120 Stat.) S35 (July 27, 2006); Presidential Signing Statement, 2006 WL 207661, *2 (July 27, 2006).

The statute provides that a person engages in a child exploitation enterprise for the purposes of the statute if he or she violates certain enumerated child abuse or exploitation statutes[4] "as a part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and commits those offenses in concert with three or more other persons." 18 U.S.C. § 2252A(g). The statute requires the government to prove: (1) the defendant committed at least three separate predicate offenses that constitute a series of at least three incidents; (2) more than one underage victim was involved; and (3) at least three other people acted "in concert" with the defendant to commit the predicate offenses.[5] *Id.* Use of a computer is not an element of the offense of conviction, and has been held not to be factored into the Guidelines base offense level. *See United States v. Deschene*s, 515 Fed. App'x 309, 309, 2013 WL 829032, **1 (5th Cir. 2013) (per curiam).

The Sentencing Commission notes that prosecutions for engaging in a child exploitation enterprise are rare, noting that no defendants were convicted of an offense under the statute in fiscal year 2010. 2012 Child Pornography Rep't at 36 n.99. Conduct that falls within the statute includes running an underage prostitution ring and manufacturing child pornography as well as participating in a child pornography distribution ring. *Daniels*, 653 F.3d at 412-14; *United States v. McGarity*, 669 F.3d

---

[4] Such predicate offenses include manufacturing child pornography, in violation of 18 U.S.C. § 2251(a); distributing child pornography, in violation of 18 U.S.C. § 2252A(2)(A); transporting a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a); and sex trafficking of children, in violation of 18 U.S.C. § 1591(a). *Daniels,* 653 F.3d at 412.

[5] In this context, "in concert" requires proof that 3 or more persons conspired with the defendant to violate one or more of the predicate offenses. *Daniels,* 653 F.3d at 412.

1218, 1230 (11th Cir. 2012) (discussing the complicated security measures taken by a sophisticated child pornography ring to ensure that no one outside the group would be able to access and view the child pornography postings).

In reports to Congress, the Sentencing Commission characterizes 18 U.S.C. § 2252A(g) as a "further enhanced penalty" or as imposing an "additional sentencing enhancement for certain child pornography offenders."  *See* 2012 Child Pornography Rep't at 36.  The Commission notes that the "corresponding sentencing guideline for violations of § 2252A(g)," U.S.S.G. § 2G2.6, "has a base offense level of 35 and includes some specific offense characteristics similar to those that appear in §§ 2G2.1 and 2G2.2."  *Id.*; *see* U.S.S.G. § 2G2.6(b)(1)-(4) (a four-level increase for minor under 12 years of age, a two-level increase if the defendant was a parent, relative, or legal guardian of the victim; a two-level increase for use of force or threat; and a two-level increase for use of a computer).  The Commission notes that "[a]ssuming two common specific offense characteristics in child pornography cases were to apply—a victim under 12 years old and the defendant's use of a computer . . . a defendant's offense level would be 41 (38 after full credit for acceptance of responsibility under § 3E1.1)" and a typical offender at Criminal History Category I would have a corresponding sentencing range would of 235-293 months.  2012 Child Pornography Rep't at 36-37 (footnotes omitted).

In comparison, "[t]he three main statutory penalty ranges in federal child pornography cases today are 15 years to life imprisonment for production offenses, five to 15 years for receipt, transportation, and distribution (R/T/D) offenses, and zero to ten or 20 years for possession offenses (depending on the age and sexual maturity of the

victims depicted in the images possessed)."[6]  *Id.* at 38-39.   Overall, the Commission reports that "[b]y fiscal year 2010, the average prison sentence for offenders convicted solely of possession offenses was 63 months, and the average prison sentence of offenders convicted of R/T/D offenses was 129 months."  *Id.* at 164.   Also, in that year, "slightly over half of all non-production offenders faced a statutory mandatory minimum sentence" and the vast majority of such offenders faced a five-year statutory mandatory minimum sentence."   *Id.* at 165.

The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils.   *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251; Child Porn. History Rep't at 30-31.   In particular, the amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity."   U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000); 2009 Child Porn. History Rep't at 30-31.   In drafting the Guidelines, the Commission

---

[6] The Guidelines sentencing ranges correspond accordingly:

Production offenders are sentenced under § 2G2.1 and face a base offense level of 32. R/T/D offenders face a base offense level of 22 (although offenders who only received and had no intent to distribute are eligible for a 2-level reduction).   Offenders only convicted of possession have a base offense level of 18.   Offenders sentenced under either §§ 2G2.1 or 2G2.2 also face up to six potential enhancements for a variety of aggravating factors.

*Id.* at 39.

was also interested in "how best to identify those offenders at the greatest risk of recidivism." *Id.* at 37. The primary victims of the crime of possession of pornography are the exploited children. *See United States v. Rugh*, 968 F.2d 750, 756 (8th Cir. 1992).

The Commission, in agreement with the general consensus among stakeholders, now believes that child pornography offenses are extremely serious, but it "also concurs with the many stakeholders who contend that the sentencing scheme should be revised to better reflect both technological changes in offense conduct and emerging social science research and also better account for the variations in offenders' culpability and their sexual dangerousness." 2012 Child Pornography Rep't, Exec. Summary at xix. The Commission concluded that "the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior." *Id.* at 321. At the same time, the Guidelines scheme results in unduly lenient ranges for other offenders who are more culpable or dangerous. *Id.* For instance, the Commission found that, for 2010, the enhancements for possessing materials depicting prepubescent minors (§ 2G2.2(b)(2)), use of a computer (§ 2G2.2(b)(6)), and number of images (§ 2G2.2(b)(7)) applied in over 95% of all § 2G2.2 cases. *Id.* at 209, 312 ("virtually all offenders (96.3%) possess images of minors who were prepubescent or under 12 years of age"). Over the last decade, technological changes, such as the widespread use of peer-to-peer (P2P) file-sharing networks, have changed the typical offender's profile—the anonymous and ready accessibility offered by new technologies means that the typical offender's collection has not only grown in volume but is also likely to include more of the worst

kinds of material, including graphic sexual abuse of prepubescent children. *Id.* at 312-13, 316. Due to the "dramatic technological changes that have greatly facilitated the commission of child pornography offenses," even "entry-level offenders" can easily acquire and distribute large quantities of child pornography. *Id.* at 6, 149, 154, 312–13. The Commission now recommends that the non-production Guideline should be revised to more fully account three factors:

> 1) the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology);
>
> 2) the degree of an offender's engagement with other offenders—in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and
>
> 3) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

2012 Child Pornography Rep't at 320.

Also, the fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. Fifteen-Year Assessment at 23-24. The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge." United States Sentencing Comm'n, *Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 14-15 (August 1991) ("1991 Mand. Min. Rep't"), *available at* http://www.ussc.gov/Legislative_ and_Public_Affairs/Congressional_Testimony_and_Reports/Mandatory_Minimum_Pena

lties/199108_RtC_Mandatory_Minimum.htm (last visited Jan. 9, 2014). The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system. 1991 Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply"); United States Sentencing Comm'n, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System*, Executive Summary at xxxi (Oct. 2011) ("2011 Mand. Min. Rep't") *available at* http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_ Testimony_and_Reports/Mandatory_Minimum_Penalties/20111031_RtC_Mandatory_ Minimum.cfm (last visited Oct. 2, 2013) ("The Commission's preliminary review of the available sentencing data suggests that the mandatory minimum penalties for certain non-contact child pornography offenses may be excessively severe and as a result are being applied inconsistently."). The Commission acknowledges that widespread sentencing disparities among similarly situated offenders in child pornography cases are attributable in part to disparate charging practices. 2012 Child Pornography Rep't. at 13.

Long terms of imprisonment for non-acting-out offenders have been strongly attacked as unsound, overly harsh and as fundamentally deviating from the Guidelines' overarching policy and expertise. *See, e.g., United States v. Dorvee*, 616 F.3d 174,

185-88 (2d Cir. 2010); *United States v. Henderson*, 649 F.3d 955, 960 (9th Cir. 2011) *United States v. Grober*, 624 F.3d 592, 609 (3d Cir. 2010); *United States v. Stone*, 575 F.3d 83, 97 (1st Cir. 2009).[7]

## II.   DISCUSSION

### A.   Guideline Calculation

The court adopts the findings in the PSR.  The court finds the defendant's objections to the PSR's assessments of leader/organizer and use of a computer enhancements should be overruled.  The evidence supports the conclusion that McGrath qualifies as a leader or organizer under U.S.S.G. § 3B1.1(a).  The court finds that use of a computer is not an element of the charged crime and is not factored into the base offense level under the Guidelines.  Although using a computer may be typical of engaging in a child exploitation crime in the modern era, the crime can be committed without using a computer, i.e., in running a prostitution ring.  The court agrees with the defendant, however, that consideration of the use of a computer enhancement may be appropriate in connection with a variance.

---

[7] Numerous district courts have also determined that the Guidelines in child pornography cases are owed less deference than those for other offenses because the Guidelines for child pornography crimes are "largely the product of congressional directives, some of which the Sentencing Commission actively opposed, rather than Commission study and expertise."  *United States v. Diaz*, 720 F. Supp. 2d 1039, 1042 (E.D. Wis. 2010); *see, e.g.*, *United States v. Munoz*, No. 11-cr-167, 2012 WL 5351750, *4 (D. Minn. Oct. 30, 2012); *United States v. C.R.*, 792 F. Supp. 2d 343, 363–64, 478–82 (E.D.N.Y. 2011); *United States v. Cameron,* No. 1:09-cr-00024, 2011 WL 890502, *5–6 (D. Me. Mar. 11, 2011); *United States v. Diaz,* 720 F.Supp.2d 1039, 1041-43 (E.D. Wis. 2010); *United States v. Riley,* 655 F.Supp.2d 1298, 1304–05 (S.D. Fla. 2009); *United States v. McElheney,* 630 F.Supp.2d 886, 891 (E.D. Tenn. 2009); *United States v. Beiermann,* 599 F. Supp. 2d 1087, 1100 (N.D. Iowa 2009); *United States v. Phinney,* 599 F. Supp. 2d 1037, 1040 (E.D. Wis. 2009); *United States v. Grober,* 595 F.Supp.2d 382, 402 (D.N.J. 2008); *United States v. Doktor,* No. 6:08-cr-46, 2008 WL 5334121, *1 (M.D. Fla. Dec. 19, 2008); *United States v. Stern,* 590 F. Supp. 2d 945, 960-61 (N.D. Ohio 2008); *United States v. Johnson,* 588 F. Supp. 2d 997, 1003 (S.D. Iowa 2008); *United States v. Noxon,* No. 07-40152–01, 2008 WL 4758583, *2-3 (D. Kan. Oct. 28, 2008); *United States v. Ontiveros,* No. 07-CR-333, 2008 WL 2937539, at *8 (E.D. Wis. July 24, 2008); *United States v. Hanson,* 561 F.Supp.2d 1004, 1008-11 (E.D. Wis. 2008); *United States v. Shipley,* 560 F.Supp.2d 739, 744 (S.D. Iowa 2008); *United States v. Goldberg,* No. 05-CR-0922, 2008 WL 4542957, at *6 (N.D. Ill. Apr. 30, 2008).

The court finds the defendant's motion for a two-level downward departure for substantial assistance under U.S.S.G. § 5K1.1 should be granted.  The record shows the defendant has provided substantial assistance to the government, enabling it to expeditiously continue covert operation of the website, ultimately resulting in indictments of several others.  The government has exercised its prerogative not to move for a reduction below the statutory maximum, contending that the defendant's assistance, though substantial, was nonetheless limited because the government would have obtained the defendant's passwords as a result of law enforcement installation of a key-logger on the defendant's computer.

The court finds McGrath's base offense level under the Guidelines is 35.  *See* U.S.S.G. § 2G2.6.  The following adjustments are applicable:  a four-level increase under U.S.S.G. § 2G2.6(b)(1)(A) for victims under 12; a two-level increase under U.S.S.G. § 2G2.6(b)(4) for use of a computer or interactive service in furtherance of the offense; and a four-level increase under U.S.S.G. § 3B1.1(a) for being a leader or organizer, resulting in an adjusted offense level of 45.  The court finds a downward adjustment for acceptance of responsibility is warranted, bringing the defendant's offense level to 42.  A two-level departure for substantial assistance reduces McGrath's total offense level to 40.  At criminal history category I, McGrath's recommended sentencing range under the Guidelines is 292 to 365 months.

## B.   Section 3553(a) Factors

McGrath's motion for a deviation or variance from the Guidelines is granted.  The court finds a sentence outside the Guidelines is warranted in this case.  The court finds a sentence of 240 months, followed by a period of supervised release of ten years is adequate to fulfill the goals of sentencing in this case.  The court is constrained to sentence the defendant to the mandatory minimum.  The mandatory minimum of twenty years is a substantial sentence under the circumstances of this case and it need not be augmented by additional time.

In making this determination, the court has considered the nature and circumstances of the offense.  Engaging in a child exploitation enterprise is undoubtedly a serious offense.  The child exploitation enterprise crime encompasses conduct from active abuse to more passive, but nonetheless exploitative and harmful, activity.  Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or the production of pornography, as well as trafficking in pornography.  Dissemination of child pornography fosters and facilitates sexual abuse and exploitation and criminalizing the possession and distribution of child pornography is a necessary complement to laws banning sexual abuse of children in that they are intended to destroy the market for exploitation of children.

McGrath's conduct falls at the lower end of the continuum of criminal conduct—from possession to advertising to distribution to production to predatory abuse and active operation of an abusive enterprise—that harms children.   The mandatory minimum sentence of twenty years takes into account the serious nature of the

defendant's conduct, while remaining proportional to the sentences for more serious offenders as well as less culpable non-production offenders.

The statute criminalizing the defendant's conduct is aimed at the most serious of child sex abuse offenders.  Although the website the defendant created and hosted facilitates and fosters widespread and sometimes profit-driven dissemination of child pornography, there is a qualitative difference between hosting a website and committing acts of actual sexual abuse on a child.  There is no indication that the defendant committed actual acts of abuse, produced child porn, or profited from his enterprise. McGrath is less culpable that actual abusers, producers or large scale distributors of child pornography.

The court has also considered McGrath's history and characteristics.  He has no history of criminal conduct and has never been incarcerated.  He has been employed for most of his adult life, has some education and is reasonably intelligent.  There is no indication that he is a predator or is at any special risk to reoffend.  A twenty-year sentence is a significant sentence for a first-time offender.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point.  However, the child pornography guideline applicable to the defendant's offense is driven by congressional directive and keyed to a mandatory minimum sentence, not grounded in any scientific, statistical, or empirical methodology. The Guidelines-recommended sentence does not reflect the sort of independent expertise that characterizes the Sentencing Commission's institutional role.  Given the acknowledged flaws in the Guidelines' scheme for punishment of Internet child pornography crimes, the court does not accord a high degree of deference to the

Guidelines.  It is difficult to defer to the Commission's Guidelines when even the Commission believes they are flawed.

The court has also considered the need to avoid sentencing disparities, but is not persuaded by the comparison to the sentences imposed on other child pornography offenders in this district.  The Sentencing Commission acknowledges that prosecutions for engaging in a child exploitation enterprise are rare.  It is this court's duty to make an individualized assessment with respect to this defendant.  The court agrees with the Sentencing Commission that the problem with the Guidelines for non-production offenses is that the Guidelines do not help the court distinguish between run-of-the-mill offenders and the worst offenders.  The Sentencing Commission recognizes that that enhancements that were originally intended to apply to only those offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.

The Guidelines' sentencing scheme for most child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders.[8]  Because he entered a plea to the 18 U.S.C.

_____

[8] This is especially true in cases that involve peer-to-peer networks where the Guidelines provide little distinction between a low-level distributor and a high-level distributor and no distinction between one who merely possesses and those who "receive," as opposed to "distribute."  In this court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines-recommended sentence that falls at or close to the low end of the statutory range for either a possession or receipt/distribution offense.  With the base offense level for receipt at 22, and the base offense level for possession at 18, and a two-point enhancement for use of a computer that is applied in every Internet child pornography case, only an offender who possessed fewer than ten images that did not contain any of the images of prepubescent minors or sadistic or masochistic acts that are widely prevalent in child pornography could receive a sentence at the low end of the statutory range.  Because of the nature of

§ 2252A(g) charge, McGrath's base offense level, without any enhancements, would have been 35, then 32 after application of the acceptance of responsibility adjustment. At criminal history category I, the sentencing range would be 121 to 151 months. With a four-level adjustment by reason of the nature of the material, the sentencing range would be 188 to 235 months. With respect to the use-of-a-computer enhancement, it seems to the court that that enhancement is subsumed within the leadership role enhancement. McGrath's use of a computer was the conduct that put him in the leadership position. To penalize the defendant for both his role and his means to the role strikes the court as double counting. Although McGrath qualifies for the role enhancement under Guidelines criteria, the court notes the defendant's role is somewhat attenuated. He does not direct the activities of those who perpetrate child abuse offenses.

The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court. The significant enhancements at issue herein raise the defendant's sentencing range from approximately ten years at the low end to close to thirty years at the low end. The enhancements lack value as a reliable proxy for culpability in this case and they are a poor gauge of relative levels of fault between child exploitation enterprise offenders. Because virtually all the child pornography on the Internet contains images of prepubescent victims, the four-level enhancement for victims under 12 would be applied in every case. The use of a computer enhancement

---

peer-to-peer file-sharing programs, a simple possessory crime evolves into a case that can be charged under the receipt prong of a receipt-and-distribution offense as soon as someone accesses a shared file.

would also be applied in every case. The leadership position as a webmaster would also be applicable in every case that involved the conduct of hosting sites on the Web. In a prosecution for this type of conduct—conduct removed from the active acts of child abuse—the enhancements found in § 2G2.6 do not provide any distinction between an actively-involved kingpin of a child exploitation ring and the more passive acts of providing a forum for child pornography. Whatever connection there may be between a defendant's relative guilt and nature of the images, use of a computer or role as administrator, an enhancement of ten levels overstates that connection.

The court finds that the ranges of imprisonment recommended under the Guidelines may be appropriate for a sexual predator or one who directs the activities of child abusers, but are not a reliable appraisal of a fair sentence in this case. The statute criminalizing the operation of a child exploitation enterprise was designed for the most dangerous of child abusers. The defendant's plea to a charge with a mandatory minimum sentence of twenty years adequately addresses congressional concerns and need not be augmented by Guidelines enhancements with little real connection to the defendant's culpability. On the culpability spectrum of increasingly serious child exploitation enterprise offenses, McGrath is an example of a defendant who deserves no more than the statutory minimum sentence. The increased dangers and harms that make engaging in a child exploitation enterprise a more serious crime than possession, receipt, advertising, promotion or distribution of child pornography are accounted for in the statutory scheme by the mandatory minimum sentence provided in section 2252A(g). Punishing the defendant's conduct as severely as that of an actual abuser has the potential to trivialize the distinctions.

The court finds that the Guidelines range of roughly twenty-four to thirty years' imprisonment is out of proportion to the defendant's culpability in this case.  The Guidelines range is based on the imposition of numerous and excessive enhancements for circumstances that would appear in nearly every Internet child exploitation enterprise case of this nature.  The Guidelines-recommended sentence is greater than necessary to protect the public and to deter McGrath from reoffending.  A sentence of twenty years is appropriate to achieve the goals of sentencing in this case.  From a progressive discipline perspective, twenty years in jail is a significant term of imprisonment for an offender who has never been incarcerated at all.

The mere fact of the prosecution of this case arguably deters others from engaging in this sort of conduct, but the deterrent effect of any longer sentence  would be marginal.  The deterrence value of the sentence is further diminished by the international market for such materials, the compulsive nature of the behavior and the unfortunate ease of accessing the Internet market.  Further, to the extent that harsh punishment is necessary to deter harm to children, punishing a less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

Under the Guidelines scheme for child pornography offenses, a person who operates or hosts an Internet website containing child pornography can receive a longer sentence than the actual perpetrators of child abuse, rapists, kidnapers, and those who commit serious drug crimes, assaults and even murder.  This sentence is relatively proportional to the sentences imposed on defendants who have committed other serious or violent crimes.

In light of all the § 3553(a) factors, a sentence of twenty years' imprisonment will promote respect for the law and afford an adequate level of deterrence to similar criminal conduct.  In addition to the twenty-year prison sentence, the court will impose a ten-year period of supervised release following incarceration, which will include terms and conditions designed to promote the safety of the public.  The public will be adequately protected by supervised release with strict conditions and by the provision of mental health treatment and sex offender treatment to McGrath.

## III.  CONCLUSION

Based upon application of the § 3553(a) factors to the circumstances unique to this case, the court finds that a sentence of 240 months' imprisonment, followed by 10 years of structured supervised release, is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

IT IS ORDERED:

1.      The defendant's motion for a variance is granted.

2.      The government's motion for downward departure is granted.

3.      A Judgment and Commitment and a Statement of Reasons in conformity with this Sentencing Memorandum, and with the court's findings at the sentencing hearing, will issue this date.

DATED this 31st day of January, 2014.

BY THE COURT:


s/ Joseph F. Bataillon
United States District Judge

23